COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| AARON VAN BROWN, | § | No. 08-23-00179-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Andrews County, Texas |
| Appellee. | § | (TC# 8244) |

## MEMORANDUM OPINION

Appellant Aaron Van Brown was convicted of indecency with a child, S.N.[1], by exposure and sentenced to 30 years. Some of the evidence at trial was the testimony of others about what S.N. had told them. On appeal, Appellant challenges the admissibility of some of that testimony and the sufficiency of the evidence to support the conviction. For the reasons stated below, we affirm the trial court's judgment but modify it to state the correct Penal Code section for the offense.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the testimony and evidence presented during trial.

---

[1] We refer to the child victim by her initials to protect her privacy. Tex. R. App. P. 9.8.

In July 2022, S.N., then 12 years old, saw her previous neighbor, Lisa Hess, at the pool and asked if she could spend the weekend with her family. After obtaining S.N.'s mother's permission, Lisa agreed. At the end of the weekend, S.N. begged to stay with them longer. S.N.'s mother agreed that S.N. could stay for another week. At the end of that week, S.N. still did not want to return home and Lisa learned that S.N.'s mother was in jail. At that point, S.N. told Lisa that she did not want to go back because she had been abused in the home and that Appellant, who visited the home often, exposed himself to her there. Lisa said that S.N. was too terrified to go into more detail.

A few days later, Lisa called the police requesting a "civil standby" while S.N. gathered her belongings from her home. Lisa told Officer Jaime Marquez that S.N. disclosed abuse. Officer Marquez then made a CPS report. Sergeant Chris Davis was assigned to investigate, and he coordinated with the CPS investigator, Quayshaun Smith. Smith interviewed S.N. and testified that she could tell him the difference between the truth and a lie. S.N. told Smith that Appellant had touched her breasts sometime in July 2022. Smith ended the interview and, together with Sergeant Davis, arranged for S.N. to be interviewed by the Child Advocacy Center.[2]

Before the forensic interview took place, S.N. disclosed more to Lisa. She told Lisa that Appellant had touched her breasts the same day that Lisa and S.N. met at the pool and that on an earlier occasion, he "had went all the way with her." Lisa explained to S.N. what that meant and S.N. confirmed that Appellant penetrated her.

Araceli Arellano conducted the forensic interview at the Child Advocacy Center. She began by asking S.N. what it meant to tell the truth. S.N. was unable to give a definition but said that people tell lies to avoid getting in trouble, but lying only gets them in more trouble. S.N. was

---

[2] The Child Advocacy Center is trained to interview children about abuse allegations. Those interviews are recorded.

unable to give examples of true and false statements but was able to correctly identify which statements were true in examples that Arellano gave. S.N. told Arellano that a few days before she met Lisa at the pool, Appellant came into her room while she was sleeping. Appellant was grabbing and squeezing her leg and he grabbed her breast, but she slapped him away. She said that Appellant told her that he was hiding from the police, and he asked to get into her bed. She told him to leave and pushed him away. He later came back into her room with no clothes on and tried to get into her bed. S.N. said that it was dark, but that she could see the shape of his genitals. Later, she went to the bathroom and Appellant was naked in the tub and opened the shower curtain as she was pulling down her pants to go to the bathroom. S.N. also told Arellano that Appellant had touched her breasts before but had never touched her genitals.

At trial, after a hearing outside the jury's presence, the trial court determined that Lisa and Smith were the first adults to whom S.N. told about her allegations and allowed them to testify about the statements that S.N. made to them.

Along with their testimony and the testimony of Marquez and Davis, S.N. also testified at trial. Her testimony was similar to what she said in the interview with Arellano except that she said that when Appellant came into her room without clothes, he got into the bed and touched her body with his. She also said that he grabbed her breasts in the bathroom but did not say that he was naked. S.N. said that she immediately told her mom and Travis Lindsey, her mother's boyfriend, what had happened.

Arellano did not testify before the jury, but Appellant offered the approximate hour-long video of the forensic interview into evidence to show the discrepancies between S.N.'s statements during the interview, her statements to others, and her trial testimony. The entire video was shown to the jury during trial.

3

The defense called three witnesses. Travis Lindsey disputed that S.N. ever told her mother and him that Appellant came to her room, was naked, or sexually assaulted her. He said that S.N. is not truthful and makes up stories for attention. He testified that he has known Appellant his whole life. His daughters had spent time around Appellant and had never made allegations against him. Delores Gresham, Travis's mother, also testified. She lived on the same property as Travis (where S.N. used to live). Like Travis, she said that S.N. was not truthful and had never before made allegations about Appellant. She said that she had known Appellant for about 20 years and did not believe that he would ever harm a child. Finally, the defense called Jordan Higdon, whom S.N. had also accused of assaulting her. He confirmed that despite those allegations, he was never investigated or questioned by law enforcement.

The jury deadlocked on Count 1—indecency by touching the breast of a minor—and the trial court declared a mistrial as to that count. The jury returned a verdict of guilty on Count 2—indecency by exposure. Appellant stipulated to prior convictions that were pled as enhancements to punishment and the jury sentenced him to 30 years.

Appellant timely appealed. He raises four issues: (1) the evidence is insufficient to support the verdict: (2) the outcry witness testimony was not admissible; (3) the trial court erred in failing to hold an ability to pay inquiry before ordering him to pay costs; and (4) the judgment of conviction cites the wrong section of the Penal Code. We take these issues out of order to address the admissibility of the outcry witness first.

## II. OUTCRY WITNESSES

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011); Tex. R. Evid. 801(d). Hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804, or is allowed by "other rules prescribed under statutory authority." *Id.*; Tex. R. Evid. 802. One of

4

the "other rules" is found in Article 38.072 of the Code of Criminal Procedure, which provides for the admission of certain out-of-court "outcry" statements regarding enumerated offenses, including indecency with a child. Tex. Code Crim Proc. Ann. art 38.072 § 1(1). Relevant here, that article provides for a hearsay exception for statements that (1) describe the alleged offense, (2) were made by a child victim who is younger than 14 years of age, and (3) were made to the first adult, other than the defendant.[3] *Id*. § 2(a). Procedurally, the State cannot introduce the statement until the trial court holds a hearing outside the presence of the jury to determine whether the statement is "reliable based on the time, content, and circumstances of the statement[.]" *Id*. § 2(b)(2). In addition, the child must testify at trial or be available to testify at the trial. *Id*. § 2(b)(3). "[O]utcry testimony admitted in compliance with [Article] 38.072 is admitted as an exception to the hearsay rule, meaning it is considered substantive evidence, admissible for the truth of the matter asserted in the testimony." *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (en banc).

We review a trial court's determination whether an outcry statement is admissible under Article 38.072 for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (en banc). In reviewing the ruling, we consider only the evidence that was before the court at the time of the ruling. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court only abuses its discretion in admitting outcry testimony if its decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (en banc) (op. on reh'g).

Three witnesses testified at the outcry hearing: Arellano, Smith, and Lisa. At the conclusion of the hearing, the State offered Smith as an outcry witness for S.N.'s statements about Appellant

---

[3] The Code was amended effective September 1, 2023, and now applies to crimes committed against children younger than 18 years of age.

5

touching her breasts and Lisa for S.N.'s statements about exposure; the trial court ruled that both were proper outcry witnesses. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) ("Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events."). Appellant argues that S.N.'s statements to Smith and Lisa were neither specific nor reliable enough to meet the hearsay exception for outcries. We only address the arguments about Lisa's testimony because Smith's testimony only addressed the charge (indecency by touching S.N.'s breasts) for which Appellant was not convicted.

## A. Specificity

When a child has made outcries to more than one person, the court must determine who is the first adult to whom the child *described* the alleged offense. Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(1)(A). The statement must be more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. The proper outcry witness is the first adult "to whom the child makes a statement that in *some discernible manner* describes the alleged offense." *Id.* (emphasis added).

Appellant argues that Arellano was the proper outcry witness because she "was the first person over the age of 18 that [S.N.] spoke to in detail regarding the alleged sexual abuse." While S.N. provided more details to Arellano during the forensics interview than she did to others, "[i]t is well established that the proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense." *Eldred v. State*, 431 S.W.3d 177, 183 (Tex. App.—Texarkana 2014, pet. ref'd); *see also Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd); *Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd).

In his brief, Appellant claims that at the Article 38.072 hearing, Lisa only testified that S.N. told her that there was sexual and mental abuse happening in that house and that a gentleman

6

exposed himself to her, such that she did not want to go back. That statement, by itself, would not describe specific conduct. But Lisa testified that a few days later, and before the forensic interview, S.N. opened up to her. She testified as follows:

Q: Now, can you . . . give us and the Court a detailed accounting of what she told you during that conversation on July 31st?

A: She had said that Aaron Brown had exposed himself to her and that -- I was trying to ask her, you know, like -- I didn't know how to ask a 12-year-old . . . what happened.
I'm like, "Well, did he, you know, go all the way with you?"
And she was crying; and she said, "Yes, he did." And that it happened in the bedroom.

Q: Did she give you any other details about that event in the bedroom?

A: She said that he was -- She woke up, and he was in the bed with her.

.     .     .

Q: And did you clarify -- when you said -- When you said "going all the way," did you clarify with her at all as to what that meant?

A: Yes, I did.

Q: And how did you clarify?

A: First, I was like, "Did he go all the way, as in, you know, did his -- his, you know, reproductive organ meet yours?"
And she said, "Yes, it did."

.     .     .

A: She said it happened on a -- that, the bedroom incident happened on a Sunday.

Although Appellant was not charged with sexual assault by penetration, S.N.'s statement to Lisa described an offense—exposure of Appellant's genitals—with sufficient specificity for Lisa to qualify as an outcry witness.

## B.   Reliability

For the hearsay exception to apply, the court must find that the outcry statement is reliable based on "the time, content, and circumstances of the statement."[4] Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b)(2). Appellant argues that the outcry statements were not reliable for three reasons: (1) S.N. was unable to distinguish between the truth and a lie in her forensic interview; (2) the outcry witnesses did not provide details about the circumstances surrounding the abuse; and (3) the outcry came after Lisa tried to bring S.N. back home after her visit.

Arellano testified at the outcry hearing as a possible outcry witness. She stated that S.N. was unable to give examples of the truth and a lie but could describe what a lie is.[5] She did not find this concerning because children are sometimes confused by the question. Smith testified that when he spoke to S.N., he also asked her to explain the difference between a truth and a lie and was "satisfied that she knew the difference." Lisa testified that after living with S.N. for almost a

---

[4] Some courts have considered the following indicia of reliability:

> (1) whether the victim testifies at the trial and admits making the out-of-court statement; (2) whether the child is of a level of maturity to understand the need to tell the truth and to have the ability to observe, recollect, and narrate; (3) whether the child's out-of-court statement is corroborated by other evidence; (4) whether the child's out-of-court statement was spontaneously made in the child's own terminology or whether there is evidence of prior prompting or manipulation by adults; (5) whether the child's out-of-court statement is clear and unambiguous and rises to the needed level of certainty; (6) whether the statement is consistent; (7) whether the statement describes an event that a child of his or her age could not be expected to fabricate; (8) whether there is abnormal behavior by the child after the contact; (9) whether there is a motive for the child to fabricate the out-of-court statement; (10) whether the statement is against the interest of the child, e.g., the child expects punishment because of reporting the conduct; and (11) whether there was an opportunity under the evidence for the alleged act to have been committed by the defendant.

*Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd*, 786 S.W.2d 357 (Tex. Crim. App. 1990). As we have stated, these factors may be helpful, but our focus must remain on the "time, content and circumstances of the outcry." *Calderon v. State*, No. 08-20-00139-CR, 2021 WL 5027754, at *5 (Tex. App.—El Paso Oct. 29, 2021, pet. ref'd) (not designated for publication). Further, as recognized by the Third Court of Appeals, evaluating those factors would permit the trial court, and reviewing courts, to go beyond the narrow scope of a 38.072 hearing because they "seemingly require inquiries into the circumstances of the abuse allegations themselves, the biases or credibility of an outcry witness, or evidence admitted following the trial court's ruling[.]" *Koury v. State*, 684 S.W.3d 537, 546–47 (Tex. App.—Austin 2024, pet. ref'd).

[5] The video of the forensic interview which was later offered into evidence shows that although S.N. could not give her own examples of true and false statements, she could identify which examples Arellano gave were true or false.

8

year, she believed that S.N. knew the difference between the truth and a lie and she has seen her differentiate between the two. That S.N., 12 years old, was too shy or did not have the vocabulary to furnish her own definitions or examples of a truth and lie does not mean that she could not differentiate between the two. The trial court did not abuse its discretion in finding the outcry reliable despite her inability to articulate the difference between the two.

Appellant claims that Lisa did not provide "any details about the events leading up to the alleged abuse, any details about the circumstances surrounding the alleged abuse—what was said, where did it happen, what was her reaction or his reaction." But in making a reliability determination, the trial court is concerned with the circumstances surrounding the *making of the statement*, not the circumstances surrounding the *abuse*. *See Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("The phrase 'time, content, and circumstances' refers to 'the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement.'"); *see also Koury v. State*, 684 S.W.3d 537, 545–46 (Tex. App.—Austin 2024, pet. ref'd); *Marquez v. State*, 165 S.W.3d 741, 747 (Tex. App.—San Antonio 2005, pet. ref'd). In short, the facts Appellant says are missing are irrelevant to the trial court's reliability determination.

Finally, Appellant implies that the trial court should not have found the outcry statement reliable because S.N. had a motive to fabricate it—the desire to stay with Lisa in the Hess household. In *Waldrep v. State*, the appellant made an analogous argument that the outcry was not reliable because the child had a motive to lie. *Waldrep v. State*, No. 08-19-00027-CR, 2019 WL 6888522, at *5 (Tex. App.—El Paso Dec. 17, 2019, no pet.) (not designated for publication). In that case, the defendant argued that the child's outcry was unreliable because she only made the statement after she was caught watching pornography on a school computer. *Id.* As we noted, "that argument presents only a chicken-and-egg dilemma. Did the then ten-year-old child make up a

9

story of oral sex because she watched pornography, or was she watching pornography because Appellant introduced her to oral sex when she was six?" *Id.* We see the same dilemma here: Did S.N. make up the allegations because she wanted to stay with Lisa, or did she want to stay with Lisa because she was terrified to return to a home where she was abused? As in *Waldrep*, the presence of a possible motive to lie does not require the court to find the statement unreliable. *See also Naranjo v. State*, No. 06-03-00056-CR, 2004 WL 420145, at *3 (Tex. App.—Texarkana Mar. 9, 2004, pet. ref'd) (not designated for publication) (holding that even though the appellant's "suggestion" of motive "has some persuasive influence . . . it is not so persuasive that it overwhelms the evidence . . . favoring a finding of reliability"). Moreover, Appellant could and did still advance the theory before the jury that S.N. was lying to stay with the Hess family.

The trial court did not act outside the zone of reasonable disagreement in finding S.N.'s outcry to Lisa specific and reliable enough for Article 38.072's hearsay exception to apply. We overrule Appellant's Issue Two.

## III. LEGAL INSUFFICIENCY

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard applies whether the evidence was direct or circumstantial. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the fact-finder to make inferences and resolve conflicts in the evidence. *Id.* "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* We do not re-weigh evidence or substitute our judgment for that of the fact-finder. *Williams v. State*, 235 S.W.3d 742, 750

10

(Tex. Crim. App. 2007). We may not resolve any conflict of fact or assign credibility to the witnesses. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992) (en banc).

A person commits indecency with a child by exposure "if, with a child younger than 17 years of age . . . the person . . . with intent to arouse or gratify the sexual desire . . . exposes the person's anus or any part of the person's genitals, knowing the child is present[.] Tex. Pen. Code Ann. § 21.11(a)(2)(A). Appellant first argues that the evidence is insufficient because "the complainant was an unreliable story-teller, rather than a child victim of indecent exposure."

He points to several inconsistencies in the evidence about the extent of alleged sexual contact. For instance, Smith testified that S.N. said that Appellant never touched her vagina. In her forensic interview, S.N. also said that no one had ever touched her vagina. But at trial, S.N. said that she had not told Arellano everything that happened because she was uncomfortable talking to someone she did not know. She testified that Appellant touched her genitals in her bedroom with his hand first, and then with his genitals. And S.N. told Lisa that Appellant went even further. Lisa testified that S.N. confided in her that Appellant touched her genitals with his and that he penetrated her. But these differences in the testimony are for the jury, not for a reviewing court to resolve. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties."). Even a victim's recantation is subject to a credibility determination by the jury who can choose to disbelieve the recantation. *Id*. "In a legal-sufficiency review, any inconsistencies in the testimony should be resolved in favor of the jury's verdict." *Bargas v. State*, 252 S.W.3d 876, 889 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Johnson v. State*, 815 S.W.2d 707, 712 (Tex. Crim. App. 1991) (en banc)). We defer to the jury's determination of credibility and cannot undermine it under the guise of a sufficiency review.

Appellant also argues that the evidence was legally insufficient to support the conviction because it was not corroborated, and the witnesses only bolstered by repeating what S.N. told them. First, corroboration is not a requirement. "The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child by sexual contact." *State v. Thrasher*, No. 08-22-00246-CR, 2023 WL 4830599, at *8 (Tex. App.—El Paso July 27, 2023, pet. ref'd) (not designated for publication); Tex. Code Crim Proc. Ann. art. 38.07(b)(1). Second, even if the testimony of several witnesses amounted to bolstering or hearsay, Appellant did not preserve that error. Officer Marquez testified that he made a report to CPS because Lisa said that S.N. made an outcry of physical, sexual, and emotional abuse. Sergeant Davis testified about some of S.N.'s answers in her forensic interview, repeating what she told the interviewer. Appellant failed to object to the testimony of either of these witnesses and has waived any error. Tex. R. App. P. 33.1(a)(1). In addition, Smith and Lisa both repeated some of S.N.'s statements, but their testimony about the outcries fell under Article 38.072's hearsay exception. Finally, Appellant offered the entire almost hour-long forensic interview, which was viewed by the jury. He cannot now complain about statements that he himself offered into evidence.

Appellant's final sufficiency argument is that there was no evidence of the necessary *mens rea*—that he exposed himself "with [the] intent to arouse or gratify the sexual desire of any person[.]" Tex. Pen. Code Ann. § 21.11(a)(2). "[T]he requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel. Op.] 1981). In many instances of sexual crimes, "[t]he conduct in and of itself is sufficient to infer intent." *C.F. v. State*, 897 S.W.2d 464, 472 (Tex. App.—El Paso 1995, no writ) (citing cases where the act itself was sufficient to show an intent to gratify). In this case, the jury was told about two times that Appellant exposed himself. In one, he entered S.N.'s bedroom at night,

12

without clothes on and either tried to get in her bed or did get in her bed. In another, she went to the bathroom, and once she pulled down her pants, he pulled back the shower curtain and was in the tub without clothes on. The jury could infer from Appellant's actions that his intent was sexual gratification.

Appellant's Issue One is overruled.

## IV. INABILITY TO PAY INQUIRY

After sentencing, a trial court is required to "inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs." Tex. Code Crim. Proc. Ann. art. 42.15(a-1). If the defendant cannot pay, the Code provides that the court can require payment later or in intervals, order community service in lieu of the fines and costs, waive them, or any combination of these options. *Id*. at (a-1)(1)–(4).

The trial court imposed a fine of $100, a reimbursement fee of $200, and court costs of $290. The court ordered Appellant, upon release from incarceration, to "pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution[.]" The record does not reflect that the trial court asked about Appellant's ability to pay. Appellant argues that this was error, which the State concedes.

After the parties filed their briefs in this case, the Texas Court of Criminal Appeals addressed this issue in *Cruz v. State*, No. PD-0628-23, 2024 WL 4031525 (Tex. Crim. App. Sept. 4, 2024). It held that the "Article 42.15(a-1) inquiry is not fundamental to the adjudicatory process, so it is forfeitable." *Id.* at *5–6. To preserve the right, a defendant must object to the trial court's failure. *Id*. at *6. As in *Cruz*, Appellant did not object to the trial court's failure to hold the hearing and has therefore forfeited his right to a hearing.[6]

---

[6] Additionally, the point of the Article 42.15 inquiry is to determine if a defendant can "immediately" pay. Tex. Code Crim. Proc. Ann. art. 42.15(a-1). Even though the trial court did not make the inquiry on the record, it implicitly found

13

The Cruz Court also held that "missing out on [a hearing] would not doom a defendant to undue hardship" because "[t]he same relief from fine and costs offered by Article 42.15(a–1)(1)–(4)—delayed or periodic payments, community service, and/or fine-and-costs waiver—is available forever after sentencing." *Cruz*, 2024 WL 4031525, at *3. Upon his release, if Appellant is unable to pay the fines and court costs, he can seek relief from the trial court at that time. *See Sloan v. State*, 676 S.W.3d 240, 242 n.2 (Tex. App.—Tyler 2023, no pet.). If a defendant notifies the court that he has difficulty paying fines and costs in compliance with the judgment, "the court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant." Tex. Code Crim. Proc. Ann. art. 43.035(a). "If the court determines at the hearing under Subsection (a) that the portion of the judgment regarding fines and costs imposes an undue hardship on the defendant, the court shall consider whether the fine and costs should be satisfied through one or more methods listed under Article 42.15(a–1)." *Id.* art. 43.035(c). The trial court retains jurisdiction for the purposes of making such a determination. *See id*. art. 43.035(e). Appellant does not assert the trial court's determination that he should pay fines and court costs at some later date amounted to an abuse of discretion.

We overrule Appellant's Issue Three.

## V. CORRECTION OF CLERICAL ERROR

Appellant was convicted of violating § 21.11(a)(2)(A) of the Texas Penal Code. But the judgment erroneously lists the statute for the offense as § 21.11(d) of the Texas Penal Code. Appellant asks us to correct this clerical error in the judgment and the State agrees.

"An appellate court may correct and reform a trial court judgment to make the judgment congruent with the record." *Nelson v. State*, 149 S.W.3d 206, 213 (Tex. App.—Fort Worth 2004,

that Appellant did not have sufficient funds to immediately pay and instead ordered an option provided to it by Article 42.15—to make a payment on a later date to be arranged after Appellant is released.

no pet.) (citing *St. Julian v. State*, 132 S.W.3d 512, 517 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) and *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.)); Tex. R. App. P. 43.2(b).

We sustain Appellant's Issue Four.

## VI. CONCLUSION

We correct the trial court's judgment to reflect that the conviction was under § 21.11(a)(2)(A) of the Texas Penal Code and affirm the judgment as modified.

JEFF ALLEY, Chief Justice

October 17, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)